UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cr-10009-ALTMAN

**UNITED STATES OF AMERICA**,

v.

**OLEG OLIYNYK and
OLEKSANDR YURCHYK**,

    *Defendants*.
_____/

## ORDER DENYING MOTION TO DISMISS

After a federal grand jury indicted our Defendants, Oleg Oliynyk and Oleksandr Yurchyk, a federal magistrate judge signed warrants for their arrest. Rather than return to the United States to face that indictment, though, the Defendants—while abroad in Thailand—moved to dismiss the charges against them. *See generally* Defendants' Joint Motion to Dismiss the Indictment and Quash Arrest Warrants (the "Motion") [ECF No. 17-1]. In their Motion, the Defendants contend that—despite our previous order declaring them fugitives, *see* Fugitive Status Order [ECF No. 15]—the fugitive-disentitlement doctrine doesn't apply to them. We disagree and now **DENY** the Motion.

### THE FACTS

On July 20, 2021, a federal grand jury in this District charged the Defendants with (1) Conspiracy to Harbor Aliens and Induce them to Remain (Count I) and (2) Conspiracy to Commit Money Laundering (Count II). *See* Indictment [ECF No. 3] at 6–9. On November 9, 2021, the grand jury returned a superseding indictment, adding a third charge against the Defendants: Conspiracy to Defraud the United States (Count III). *See* Superseding Indictment [ECF No. 8] at 10–13. In a nutshell, the Government has accused the Defendants of "operat[ing] labor staffing companies in Key West[,] . . . facilitat[ing] the employment of non-resident aliens[,] . . . withhold[ing] federal employment taxes[,]

. . . [and] transfer[ing] the proceeds from th[ose] illegal activities." Government's Response in Opposition to the Defendants' Joint Motion to Dismiss the Indictment and Quash the Arrest Warrants ("Response") [ECF No. 19] at 2. The Government also alleges that, after learning that they were being investigated, the Defendants fled the United States. *See* Superseding Indictment at 5 ("On or about April 16, 2013, after learning that he was under criminal investigation, defendant Oliynyk left the United States and returned to Ukraine . . . . Since leaving, he has remained outside the United States. [O]n or about May 2016, after learning that he was under criminal investigation, defendant Yurchyk left the United States and returned to Ukraine. Since leaving, he has remained outside the United States.").

On July 20, 2021, the grand jury separately indicted Mykhaylo Chugay, Oleksandr Morgunov, and Volodymyr Ogorodnychuk on the very same charges it brought against our Defendants. *See* Indictment, *United States v. Chugay et al.*, 21-cr-10008 (S.D. Fla. July 21, 2021) (Martinez, J.), ECF No. 3 at 6–9 ("[Count I] Conspiracy to Harbor Aliens and Induce them to Remain" and "[Count II] Money Laundering Conspiracy"). As it did with our Defendants, on November 9, 2021, the grand jury returned a superseding indictment, charging Chugay and Morgunov (but not Ogorodnychuk) with a third crime: Conspiracy to Defraud the United States. *See* Superseding Indictment, *Chugay et al.*, 21-cr-10008, ECF No. 69 at 10–14.

When Russia invaded Ukraine in February 2022, our Defendants fled to Thailand, where Thai authorities—having received a formal extradition request from the United States—arrested and detained the Defendants. *See* Response at 4 ("[N]ear the start of the Russian Invasion of Ukraine . . . Oliynyk and Yurchyk left Ukraine with their families and traveled to the Kingdom of Thailand. The United States submitted an extradition request to Thai authorities, and Oliynyk and Yurchyk were arrested and detained."); *see also* Motion at 1 ("On February 24th, 2022[,] Russian Federation attacked

Ukraine. Out of fear of their lives and lives of their families both Defendants left Ukraine in a hurry. . . . [and] arrived to the Kingdom of Thailand. . . . On April 19th, 2022[,] both of them were arrested at the registered address by the Thai police on request of the US Government. The extradition proceeding was commenced."). Instead of turning themselves in, however, the Defendants (still in Thailand) filed this Motion, in which they contend (in part) that the fugitive-disentitlement doctrine shouldn't bar their request for dismissal. *See* Motion at 2 ("1.1 [The] [f]ugitive disentitlement doctrine doesn't prevent a consideration of this motion. The first possible objection of the Government or the court itself could be that [the] fugitive disentitlement doctrine prevents consideration of this motion . . . . Neither of [the Defendants] should be forced to travel to the USA to be tried under the facially defective indictment.").

One more factual point before we dig into things: In the related case before Judge Martinez, Morgunov sought discovery from one of his codefendants (Chugay), and Chugay responded by seeking permission to share that discovery with Morgunov. *See* Motion of Mykhaylo Chugay for Court Order Affirming Rights of Defendant to Share Evidence with Co-Defendant, *Chugay et al.*, 21-cr-10008, ECF No. 72 at 1 ("[The Defendant Chugay] moves this honorable Court for an Order affirming his rights to share evidence with the co-defendant in this criminal case Oleksandr Morgunov[.]"). But, relying on the fugitive-disentitlement doctrine, Judge Martinez denied that request. *See* Order Denying the Defendant's Motion for a Court Order Affirming Right to Share Evidence and Granting the Government's Protective Order, *Chugay et al.*, 21-cr-10008, ECF No. 158 at 4 ("The Court agrees with the Government that Morgunov is a fugitive, not entitled to receive discovery until he avails himself of the laws of the United States, and hereby grants the Government's [motion for protective order].").

3

## THE LAW

The "fugitive disentitlement doctrine" accounts "for 'the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing a 'fugitive' to use the resources of the courts only if the outcome is an aid to him,' and 'the need to avoid prejudice to the nonfugitive party.'" *United States v. Shalhoub*, 855 F.3d 1255, 1259 (11th Cir. 2017) (quoting *United States v. Barnette*, 129 F.3d 1179, 1184 (11th Cir. 1997)). "A court may apply the fugitive disentitlement doctrine to dismiss a lawsuit or appeal if the party against whom it is invoked [1] is a fugitive, [2] her fugitive status has a sufficient connection to the present action, and [3] dismissal is 'necessary to effectuate the concerns underlying' the doctrine." *Ener v. Martin*, 987 F.3d 1328, 1332 (11th Cir. 2021) (quoting *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998)). "The doctrine also allows a district court to 'sanction or enter judgment against parties on the basis of their fugitive status.' Such sanction may include the denial of affirmative relief requested by motions made by a fugitive defendant." *Stansell v. Revolutionary Armed Forces of Colombia*, 2022 WL 11287345, at *2 (S.D. Fla. Oct. 19, 2022) (Scola, J.) (quoting *Shalhoub*, 855 F.3d at 1259); *see also, e.g.*, *United States v. Itriago*, 2019 WL 1232128, at *3 (S.D. Fla. Feb. 8, 2019) (Hunt, Mag. J.) ("Because of the applicability of the doctrine in this case, the undersigned does not reach the merits of the [motion to dismiss the indictment]."), *report and recommendation adopted*, 2019 WL 1228000 (S.D. Fla. Mar. 15, 2019) (Zloch, J.).

## ANALYSIS

### I. The fugitive-disentitlement doctrine applies here

The fugitive-disentitlement doctrine allows us to "sanction or enter judgment against parties on the basis of their fugitive status." *Magluta*, 162 F.3d at 664. And denial of the Defendants' Motion is an appropriate sanction in the circumstances of our case. *See, e.g.*, *Stansell*, 2022 WL 11287345, at *2 ("Such sanction may include the denial of affirmative relief requested by motions made by a fugitive

defendant." (citing *Shalhoub*, 855 F.3d at 1259–61)); *see also United States v. Salcido*, 475 F. App'x 788, 789 (2d Cir. 2012) ("'[F]ugitive disentitlement' refers to the dismissal of appeals, or *other petitions for relief of a fugitive defendant*, as a *sanction* for that defendant's flight[.]" (quoting *Ortega–Rodriguez v. United States*, 507 U.S. 234, 239–42 (1993) (emphasis added))). The doctrine also "discourage[s] flights from justice." *Barnette*, 129 F.3d at 1183. "To apply the fugitive disentitlement doctrine the [Defendant] must be a fugitive and his fugitive status must have a connection, or nexus, to the [judicial] process he seeks to utilize." *Ibid.* The doctrine applies where a party "demonstrates such disrespect for the legal process that he has no right to call upon the court to adjudicate his claim." *Ener*, 987 F.3d at 1331–32. The doctrine plainly applies here.

*First*, our Defendants *are* fugitives. "A party is a fugitive if she intentionally avoids arrest by fleeing, hiding within, or remaining absent from the jurisdiction." *Id.* at 1332. On May 3, 2022, we formally designated the Defendants as fugitives because, despite knowing about the charges against them, they have failed to return to the United States. *See generally* Fugitive Status Order. And, indeed, since we entered that order, the Defendants have filed this Motion, in which they acknowledge the charges against them and nevertheless *refuse* to turn themselves in. *See* Motion at 4 ("The essence of the Superseding Indictment is very simple. According to the Government [sic] position the Defendants conspired with others to create staffing companies. That staffing companies [sic] provided workers to hotels and restaurants without verifying the eligibility of this [sic] workers to work in the United States. [And] didn't withhold taxes from such workers and wired profit from staffing activities to other accounts.").

Resisting this conclusion, the Defendants contend that they aren't "fugitive[s] from justice because they never tried to flee, avoid police[,] or hide." Motion at 4. "The mere fact," they continue, "that they refuse to submit to illegal extradition can't be used to punish them with refusal to have

5

access to US courts." *Ibid*. But that's just not the law. As we've explained, "whatever [the Defendants'] intent may have been when [they] left the United States, [they have] certainly since established [their] status as [fugitives] from this nation's criminal process, particularly as of the moment [they] chose to *resist* extradition." *Schuster v. United States*, 765 F.2d 1047, 1050 (11th Cir. 1985) (emphasis added); *see also id*. at 1050–51 ("Schuster also attempts to distinguish her case from the *Molinaro* line by pointing out that those cases involved convictions or guilty pleas, whereas she has only been indicted. Schuster's resisting extradition, however, speaks as loudly as any guilty plea in these circumstances."); *Shalhoub*, 855 F.3d at 1263 (defining a fugitive as one who, "while legally outside the jurisdiction," constructively flees "by *deciding* not to return" (quoting *Barnette*, 129 F.3d at 1184 (emphasis added))).

*Second*, the Defendants' fugitive status "has a sufficient connection to the present action[.]" *Ener*, 987 F.3d at 1332. The Superseding Indictment specifically alleges that the Defendants absented themselves from the United States *after* they discovered that the Government was investigating them *in this case*. *See* Superseding Indictment at 5 ("On or about April 16, 2013, after learning that he was under criminal investigation, defendant Oliynyk left the United States and returned to Ukraine . . . . Since leaving, he has remained outside the United States. [O]n or about May 2016, after learning that he was under criminal investigation, defendant Yurchyk left the United States and returned to Ukraine. Since leaving, he has remained outside the United States.").[1] To "absent" oneself means "to keep

---

[1] "In adjudicating a criminal defendant's motion to dismiss an indictment, we confine our review to the four corners of the indictment itself." *United States v. Hussaini*, 2022 WL 138474, at *2 (S.D. Fla. Jan. 14, 2022) (Altman, J.) (first quoting *United States v. Critzer*, 951 F.2d 306, 306–07 (11th Cir. 1992) ("The sufficiency of an indictment is determined from its face."); and then quoting *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes.")). And (notably for our purposes) we must accept the Indictment's factual allegations as true—at least at this early phase of the case. *See United States v. Mann*, 517 F.2d 259, 266 (5th Cir. 1975) ("On review of an order dismissing an indictment, the indictment is to be tested not by the truth of its allegations but by its sufficiency to charge an offense, since the allegations

(oneself) away." *Absent*, Merriam-Webster Unabridged, https://www.merriam-webster.com/dictionary/absent (last visited Mar. 3, 2023). As the Defendants admit in their Motion, they are keeping themselves away from the United States (in part) because they know about the charges against them. *See* Motion at 4 ("Neither of [the Defendants] should be forced to travel to the USA to be tried under the facially defective indictment. . . . The mere fact that [the Defendants] refuse to submit to illegal extradition can't be used to punish them with refusal to have access to US courts."); *see also* Superseding Indictment at 5 ("On or about April 16, 2013, after learning that he was under criminal investigation, defendant Oliynyk left the United States and returned to Ukraine . . . . Since leaving, he has remained outside the United States. [O]n or about May 2016, after learning that he was under criminal investigation, defendant Yurchyk left the United States and returned to Ukraine. Since leaving, he has remained outside the United States."). That's enough for us to find that their fugitive status "has a sufficient connection to the present action[.]" *Ener*, 987 F.3d at 1332; *see also United States v. Nabepanha*, 200 F.R.D. 480, 482–83 (S.D. Fla. Feb. 8, 2001) (Brown, Mag. J.) ("Defendant's failure to surrender himself to authorities once he learned of charges against him allows this Court to infer his intent. This Court is satisfied that Defendant is a fugitive; he knows of charges against him and actively absents himself from this jurisdiction.").

*Third*, denying the Motion "serves the doctrine's equitable purposes[.]" *Ener*, 987 F.3d at 1332. Those purposes "include the difficulty of enforcement against one not willing to subject himself to the court's authority; the inequity of allowing a fugitive to use court resources only if the outcome is an aid to him; and the need to avoid prejudice to the nonfugitive party." *Magluta*, 162 F.3d at 664. As the Eleventh Circuit has observed: "Litigating from outside the jurisdiction can allow the fugitive to

---

contained in the indictment must be taken as true." (citing *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 33 n.2 (1963) (cleaned up))).

avoid complying with an adverse judgment: 'heads I win, tails you'll never find me.'" *Ener*, 987 F.3d at 1332 (quoting *Antonio-Martinez v. INS*, 317 F.3d 1089, 1093 (9th Cir. 2003)). For obvious reasons, "[d]isallowing that gamesmanship avoids prejudice to the nonfugitive party," *ibid.*, and thus "promotes the efficient, dignified operation of the courts," *Degen v. United States*, 517 U.S. 820, 824 (1996) (cleaned up). We won't allow the Defendants (on the one hand) to knowingly evade the charges our Government has asserted against them while (on the other) permitting them to exploit our judicial system for their own benefit. As one of our colleagues has noted: "To accept [the] Defendant's position that the fugitive disentitlement doctrine does not apply . . . is to invite all criminals to flee from the United States before their arrest." *Nabepanha*, 200 F.R.D. at 483.

Pushing back, our Defendants rely on *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), for their view that they shouldn't have to submit themselves to our jurisdiction "in the absence of a judicial order of extradition." Motion at 4. But the defendant in *Hijazi*—who, like our Defendants, was facing criminal charges in the United States—"surrendered *voluntarily* to Kuwaiti authorities," who (in turn) refused to extradite him. *Hijazi*, 589 F.3d at 405 (emphasis added). When the defendant filed a motion to dismiss the charges against him, the district court denied the motion, relying (as we do) on the fugitive-disentitlement doctrine. *Ibid.*

In reversing the district court, the Seventh Circuit relied on three salient details—none of which are present here. *First*, as we've said, the court pointed out that, "when [Hijazi] learned of the indictment, he surrendered himself to the Kuwaiti authorities." *Ibid.* This fact was significant because, in the court's view, "[h]ad those authorities been inclined to detain him and then to turn him over to the U.S. prosecutors, they could have done so." *Ibid.* But, despite Hijazi's voluntary surrender and the fact that "the Department of Justice formally asked the Kuwaiti authorities to turn Hijazi over to it, . . . Kuwait has refused to grant the request." *Ibid.* Our Defendants, by contrast, were arrested by Thai

authorities pursuant to a formal request for extradition from the U.S. Department of Homeland Security. *See generally* Affidavit in Support of Request for Extradition [ECF No. 17-1] at 18–45.

*Second*, the court noted that, "[w]ith the exception of one brief visit to the United States in 1993, which all agree was unrelated to this case, Hijazi has never been in the country, he has never set foot in Illinois, and he owns no property in the United States." *Hijazi*, 589 F.3d at 412. Again, our case is different. Our Defendants (the Government alleges) committed the charged crimes while they were living and working here in this District. *See* Superseding Indictment at 7–13 ("[W]ithin the Southern District of Florida and elsewhere, the Defendants . . . did knowingly and intentionally combine, conspire, confederate and agree with each other to commit the following offenses: [Conspiracy to Harbor Aliens and Induce them to Remain (Count I),] . . . [Conspiracy to Commit Money Laundering (Count II),] . . . [Conspiracy to Defraud the United States (Count III)].").

*Third*—and most important—the Seventh Circuit explained that, since the defendant hadn't been in the United States, he (by definition) "did not flee from the jurisdiction or from any restraints placed upon him." *Hijazi*, 589 F.3d at 412. That isn't the case here—where the Superseding Indictment specifically alleges that the Defendants fled the United States after discovering that the Government was after them. *See* Superseding Indictment at 5 ("On or about April 16, 2013, after learning that he was under criminal investigation, defendant Oliynyk left the United States and returned to Ukraine . . . . Since leaving, he has remained outside the United States. [O]n or about May 2016, after learning that he was under criminal investigation, defendant Yurchyk left the United States and returned to Ukraine. Since leaving, he has remained outside the United States.").

But here's the thing: Even if *Hijazi* were on all-fours with our case, the Eleventh Circuit (*our* Circuit) has explicitly declined to follow the Seventh Circuit's lead. To use our Circuit's words:

> Unlike the petitioner in *Hijazi*, Shalhoub cites no refusal by the Saudi Government to extradite him, and he has significant contacts with the United States. *Notwithstanding*

9

> *what the Seventh Circuit has stated on this issue, see* [*Hijazi*, 589 F.3d at 407] (explaining that although Hijazi could 'show[ ] up in court' to challenge the indictment, 'Hijazi ha[d] [a] right to stay [in Kuwait], and in that way, to refuse to cooperate with the U.S. proceeding'), *we submit that Shalhoub has an adequate remedy: appearance in the district court.*

*Shalhoub*, 855 F.3d at 1264–65 (quoting *Hijazi*, 589 F.3d at 407 (emphases added)). And it's our duty to follow Eleventh Circuit (not Seventh Circuit) precedent. *See Hernandez v. Mayorkas*, 2022 WL 4117073, at *7 (S.D. Fla. Mar. 15, 2022) (Lenard, J.) ("Published opinions of the Eleventh Circuit Court of Appeals are binding upon the district courts within the Eleventh Circuit." (citing 11th Cir. R. 36, I.O.P. (2) ("Under the law of this circuit, published opinions are binding precedent."))); *see also In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) ("By overlooking the *Branch* decision, which is binding precedent, and instead following the Third Circuit's *O'Neill* decision, which is not, the district court inadvertently transgressed the fundamental rule that courts of this circuit are bound by the precedent of this circuit.").

\*\*\*

Because the fugitive disentitlement-doctrine applies here, we **DENY** the Motion to Dismiss [ECF No. 17-1].

**DONE AND ORDERED** in the Southern District of Florida on March 3, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

10